IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

FIRST SERVICE BANK PLAINTIFF

VS. CIVIL NO. 1:24CV00020

WORLD AIRCRAFT, INC., ET AL DEFENDANT

TELEPHONIC STATUS CONFERENCE

BEFORE THE HONORABLE TAYLOR B. MCNEEL
UNITED STATES DISTRICT JUDGE

JANUARY, 29, 2024
GULFPORT, MISSISSIPPI

APPEARANCES:

FOR THE PLAINTIFF:
JOHN ADAM CRAWFORD, JR.
BUTLER SNOW, LLP
1020 HIGHLAND COLONY PARKWAY, SUITE 1400
RIDGELAND, MISSISSIPPI 39157

FOR THE DEFENDANT, EL DORADO GAS & OIL, INC.
PATRICK A. SHEEHAN, ESQUIRE
SHEEHAN LAW FIRM, PLLC
429 PORTER AVENUE
OCEAN SPRINGS, MISSISSIPPI 39564

ALSO PRESENT: Thomas Swarek, Pro-Se Defendant

REPORTED BY: SHERRI L. PENNY, RPR, FCRR
Mississippi CSR #1609
2012 15th Street, Suite 403
Gulfport, Mississippi 39501
(228) 563-1781

**THE COURT:** Good morning. This is Taylor McNeel. We are now on the record in cause number 1:24cv20. This is First Service Bank versus World Aircraft, Incorporated, and Thomas Swarek.

Who do we have on the line for First Service Bank?

**MR. CRAWFORD:** Thank you, Your Honor. This is Jack Crawford with Butler Snow for First Service Bank.

**THE COURT:** All right. Who do we have on the line for -- is Mr. Sheehan on the line?

**MR. SHEEHAN:** I am, Your Honor.

**THE COURT:** All right. Please enter your appearance, Mr. Sheehan.

**MR. SHEEHAN:** This is Pat Sheehan, I represent El Dorado Oil and Gas, Gas and Oil, the debtor in possession.

**THE COURT:** Mr. Swarek, you are on the line; correct?

**MR. SWAREK:** Yes, sir, I will be pro se for myself right now if it is all right with Your Honor.

**THE COURT:** Is there anybody else on the line that has not identified themselves?

So I set this matter for status conference in follow up to last week's status conference because my understanding is Mr. Swarek has now been served. He was notified of this status conference. So I wanted to accomplish two things: Number 1, I wanted to see where Mr. Swarek is in terms of obtaining a lawyer, number 1; and number 2, see if there's been any

progress made to a resolution of the motion for TRO or preliminary injunction.

So first question to you, Mr. Swarek, my understanding is you have been served with the complaint and you are aware of this motion for a temporary restraining order. Now, I know you are not a lawyer, Mr. Swarek. Are you in the process of hiring a lawyer?

**MR. SWAREK:** Yes, sir, we are. We have to determine whether jurisdiction is in Texas or Mississippi or Arkansas. We're in conference with them. If I may, Your Honor, I want to get something straight about me moving equipment, which I have not done, and I can prove I have not.

**THE COURT:** Mr. Swarek, let me stop you right there. Now, because of the nature of this hearing, it's really just a status conference, okay. It's just a status conference. But because of the nature of the motion for TRO that's been filed, I have been -- I had a status conference last week and I am having a status conference this week.

I know that you're aware from the motion for a TRO that the plaintiff, First Service Bank, has some concerns that you may be moving equipment to Argentina or you may be moving equipment elsewhere. I understand that you probably have that understanding that they have those concerns. I do want to pause you, though. I want to pause you for a second because you're not -- you are not under oath right now, but you are a

party to this case, and so this is on the record right now. So we have a court reporter that is taking down everything that is being said. So even though you are not under oath right now, since you are a party in this case, First Service Bank can potentially use what you say in this hearing against you in this civil case; do you understand that?

**MR. SWAREK:** Yes, sir, I understand it fully.

**THE COURT:** And I just want you to understand that because it is important. As a result of that, you are unrepresented today, and so you need to be cautious about what you're telling me today about things that may not be necessary; do you understand that?

**MR. SWAREK:** Yes, sir, I realize that. I am only going to tell the truth and it won't harm me at all.

**THE COURT:** All right.

**MR. SWAREK:** And I will be glad to sign an affidavit to what I say today. If you want to prepare it, I'll sign it and swear under the penalties of perjury in your court, Your Honor.

**THE COURT:** Okay. Now that you understand that, though, and it's very important you understand that, you can tell me what you're going to tell me if that's still what you want to do.

**MR. SWAREK:** Yes, sir, I do. I will try to give you the *Reader's Digest* version if I can. I drilled oil, 1,200 oil

and gas wells in the '80s. I sold out and moved and started buying and selling farmland in Arkansas and met Mr. Grumples 28 years ago; had a great relationship, got a great bank. About 2018, I decided to get back in oil and gas, and I borrowed on my farmland from MetLife, who I had a great record with, $25,000,000, 15 years fixed, three percent interest fixed on five years, last 10 years three percent interest, three percent principal, 70 percent balloon in the end, and went back in the oil and gas business with that money. I also borrowed $10 million from Amegy Bank, it's a Mormon bank in Houston. And I bought a really nice property there, it was in McMullen County, Texas. Now it's 45,000 acres, grew a nice field, and then I bought two or three more.

When I obtained through First Service a Main Street loan, it's similar to a PPE loan when we had COVID and we were trying to keep people working --

**THE COURT:** Mr. Swarek, I am not sure -- you're going to have an opportunity tell your story in this case. And this status conference is not the time for where I am going to be making some determination on whether you have made good decisions or whether you have made bad decisions. This status conference is not the time where I am making any type of decision whether there's any likelihood of the merits on whether a contract has been breached or not. Those types of things are not what is being decided today.

**MR. SWAREK:** I am sorry. I apologize. Yes, sir, I understand fully. So we have about two or three billion dollars worth of what you call PV 10 valued leases. And then we have a lot of equipment that I thought that I was trying to integrate the oil business (inaudible). And so all that equipment is located on pieces of land and buildings that we own. So our net worth is extraordinarily high if you do a market value, market-to-market financial statement.

And then I was -- there's a company in Argentina called Vista, V-I-S-T-A. Just recently, Exxon traded stock for stock through Pioneer, 60 billion dollars for a piece of property in West Texas in the shell. Well, they got shell in Argentina. They need equipment. I have been contacting them to trade equipment for them for stock, the stock trades on the New York stock exchange so I can get a 70 percent loan on it, you know, a loan from the stockbrokers. And so what I was hoping to do was make a swap, and I think we would have, way I got it figured, about 2- or 300 million if we borrowed on the stock, and I was talking with them. But the equipment has been locked up -- I would never let the equipment out the door until everyone knew what I was doing. And then someone came up with some affidavit that I had bought a boat and was on my way to Argentina to escape extradition, and that is a flatout lie.

**THE COURT:** Let's shift now to Mr. Sheehan. Mr. Sheehan, have you had an opportunity to speak with Mr. Crawford

or any other attorneys with First Service Bank and make any type of movement towards potentially reaching an agreed resolution of the motion for TRO?

**MR. SHEEHAN:** Jack Crawford and I worked on that yesterday and this morning and came up with an order that we approved of as the company representative. The order we drafted tracks an order entered in the bankruptcy court, I think, on the 23rd from the hearing we had in the bankruptcy court on the 19th, both of January. And it's a simple agreement saying we would not participate, and Tom Swarek would not participate in moving any equipment or hiding it, and could only be used in the ordinary course of business.

I have not had the chance to discuss that with Mr. Swarek. In case Your Honor didn't know, Mr. Swarek is the president of the El Dorado company, El Dorado Gas and Oil, which is my client in this. I couldn't represent him personally because it would be a potential conflict of interest in the bankruptcy court under the bankruptcy code. And I have not had a chance to discuss it with him since we came up with that order; although, we did send a copy of that order and it was reported back to me that he had a couple of changes he wanted to make. I think we're pretty close to coming up with an agreed order that would maybe not disclose the case, but at least give to a status quo with an agreed-to TRO in place.

**THE COURT:** Okay. And even though you don't

represent Mr. Swarek individually, you represent El Dorado. Since Mr. Swarek is president of El Dorado and since you have a relationship with El Dorado, you feel comfortable, at the very least, of communicating with Mr. Swarek about this proposed order and explaining to Mr. Swarek that he is going to have to take this into consideration in his own personal capacity and on behalf of World Aircraft, Incorporated, and you are not necessarily providing advice to him in an individual capacity on World Aircraft, Incorporated, he would be doing that himself or through other counsel; is that fair?

**MR. SHEEHAN:** That's correct, Your Honor.

**THE COURT:** Okay. Mr. Swarek, do you understand all of that?

**MR. SWAREK:** Yes, sir. If I may point out a couple things. I don't want to be restricted from dealing with my equipment locked up and me selling it and paying everybody off and getting out of the situation. Another thing is, we have a trustee, Dawn, a lady that is about 50 people, that I been with three days in Dallas. And we sent her underling there to that -- we have got seven pieces of land with 7- or $800 million worth of equipment stacked, and went to the one in Dallas. And the bank has hired guards, I heard, to guard the thing. So I have a gentleman, Zack Massey, who had a wire line company that I worked a deal with, ten percent net profit and, the wire line truck is there and all the equipment there.

There's a 100,000 square foot building there that I own where it's located, and he is there rent free, and he has been doing some jobs. The trustee underling went there, and what we're hearing is the wire line equipment is all gone now, they moved out, and I can't get ahold of anybody, but I am sure the bank would know about it. I didn't have anything to do with that at all.

Another thing I want to point out is that Butler Snow represented me. I paid them about a million dollars in fees on a pretty large case in Mississippi a while back, and I wanted to disclose that, that Butler Snow was my lawyer. Judge Pickering was working there then and he was my lawyer with Butler Snow. It was a German in Germany that I bought a farm from and I was trying to seek specific performance on the contract.

**THE COURT:** Okay. Is it true, Mr. Swarek, that you are close to reaching an agreement that would resolve just this temporary relief that First Service Bank is seeking? Now, First Service Bank is suing you for breach of contract, they're suing you for a few different things. But in terms of this motion for temporary restraining order or preliminary injunction, it sounds like there's been some discussions between Mr. Crawford and Mr. Sheehan about resolving just the so-called emergency requested relief. Is that true, that you believe y'all are close to reaching an agreement on that?

**MR. SWAREK:** Sir, I don't know because this affidavit they got is a false affidavit that Butler Snow was involved with, along with another trustee. And the gentleman that wrote it said he never said it that way. And they used this to go against me in the court, in the bankruptcy court Friday, and that judge heard this stuff saying that them presenting it as the truth when they know I can prove they know it's not true. And I got that gentleman coming this way to testify in court for a fraudulent affidavit.

**THE COURT:** Mr. Swarek, that's an issue that would have to be revolved at the motion for temporary restraining order hearing if you can't reach an agreement with First Service Bank. If you can't reach an agreement with First Service Bank, I'll have to get into the credibility of that affidavit. Now, yes, that is an affidavit, it's not notarized, it's from an individual who First Service Bank says is not going to come to the hearing. And so if there is a hearing, you will have an opportunity to get into the credibility of that individual. And, apparently, First Service Bank is not going to get into the credibility of that individual by putting that individual on the stand. That individual is not willing to come to a hearing, according to First Service Bank, as the documents that I forwarded to you have essentially said in my communications previously until you entered your appearance in this case. But all of that type of stuff will not have to be

resolved if you can resolve the expedited nature in terms of reaching an agreement with First Service Bank as to what will or will not be done with the collateral because that's all that that -- really, all that affidavit deals with is whether there is an emergency basis for dealing with that collateral. And if you could reach an agreement with First Service Bank as to how you're going to deal with that collateral, then we're not going to have a hearing on the motion for temporary restraining order and the motion for preliminary injunction.

If you cannot reach an agreement with First Service Bank as to how the collateral is going to be handled, at least temporarily, then we are going to have a hearing. And then that's when you can put forward your defenses at the hearing and you can talk about the credibility of the person in the affidavit. Again, my understanding is that individual is not going to come to a hearing.

Mr. Crawford, what say you?

**MR. CRAWFORD:** Your Honor, a few different points. In the proposed agreed order, Mr. Sheehan, on behalf of El Dorado, is withdrawing the motion to intervene on behalf of El Dorado, so that would dispatch of that motion. We have -- Mr. Sheehan is in agreement with the language.

And then right before we got on this call, Mr. Sheehan indicated that Mr. Swarek may have some additional language that he wanted in the order, but I haven't heard what that

language is. And as long as it's not unreasonable, then we could likely get all this put behind us. I need to hear from Mr. Swarek or Mr. Sheehan on that issue.

**THE COURT:** Okay.

**MR. SWAREK:** Yes, sir. I sent the trustee -- our trustee in one of the cases will verify they were told they couldn't go in the building because of the explosives, but that's not true. What I understand is I've got equipment missing, wire line equipment. I wasn't watching that end of it, I've been in Mississippi and Dallas.

**THE COURT:** Okay. This is what I am going to do. The most -- the primary thing that I am focused on right now is to make sure that any type of emergency is taken care of. And right now, First Service Bank has filed a motion for temporary restraining order or preliminary injunction, and they are seeking expedited treatment of that motion. Now, if the parties can reach an agreement, reach an agreement as to what can or cannot be done with the collateral, it sounds like, then there would be no necessity for a hearing on the motion for temporary restraining order or preliminary injunction.

So what I am going to do is I am going to continue to instruct the parties to continue to confer, which includes First Service Bank conferring with El Dorado, and Mr. Sheehan conferring with Mr. Swarek. And Mr. Swarek, you need to continue to attempt to obtain a lawyer for this case; do you

understand that?

**MR. SWAREK:** Yes, sir, I am. I am doing that, yes, sir.

**THE COURT:** Okay. I am not going to set -- well, I am actually. I am going to set a new status conference. This new status conference is going to be set for February 8th, that's February 8th at 11:00 a.m., February 8th at 11:00 a.m. Again that will be telephonic, it will be similar to what we had today.

In the meantime, my law clerk may follow up and see where things stand in an order. But that's a little over a week, and I feel like certainly we can have, if the parties confer in good faith, a resolution. Again, the resolution is what will be done with the collateral temporarily. If that can be reached amongst the parties as to how the collateral will be handled, I think that's all that really needs to be decided by and large. Now, the parties are free to agree to other things in the agreement, I am not going to limit that.

Mr. Swarek, you do need to keep working on getting a lawyer. And Mr. Sheehan, of course, has the ability to confer with you in his capacity in representing El Dorado. And I am going to set this matter for status conference for February 8th at 11:00 a.m. And if it becomes necessary that we schedule an earlier status conference, then the parties can request that.

I was just conferring with the court reporter and the

courtroom deputy clerk to confirm that date. It's going to be February 8th at 11:00 a.m. Is there anything else, Mr. Crawford, on behalf of First Service Bank?

**MR. CRAWFORD:** No, Your Honor.

**THE COURT:** Anything else, Mr. Sheehan?

**MR. SHEEHAN:** Your Honor, I want the Court to be aware we have filed a motion as of last Friday to consolidate El Dorado with another bankruptcy case, the Hugoton case, in which there is a trustee. So we are predicting right now that the bankruptcy court will consolidate the cases and the trustee in Hugoton will also be the trustee in the El Dorado case. And at that point, the trustee will take over all representation of El Dorado. So depending on when the bankruptcy court rules on that, I may not be involved as El Dorado's counsel.

**THE COURT:** Well, you may not be involved as El Dorado's counsel for purposes of your appearance in that bankruptcy proceeding, but you could still potentially confer with Mr. Swarek, couldn't you?

**MR. SHEEHAN:** Yes, sir, no problem with that.

**THE COURT:** Okay. Anything else, Mr. Swarek?

**MR. SWAREK:** No, sir. Thank you, Your Honor.

**THE COURT:** All right. Thank y'all, court will stand in recess.

(HEARING CONCLUDED)

- - -

CERTIFICATE OF COURT REPORTER

I, Sherri L. Penny, RPR, FCRR, Official Court Reporter for the United States District Court for the Southern District of Mississippi, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings reported by me using the stenotype reporting method in conjunction with computer-aided transcription, and that same is a true and correct transcript to the best of my ability and understanding.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

S/ Sherri L. Penny
OFFICIAL COURT REPORTER